No. 98-610

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 81

299 Mont. 157

999 P. 2d 308

TERRY L. BRADLEY,

Plaintiff and Appellant,

v.

NORTH COUNTRY AUTO AND MARINE

and FIRST SECURITY BANK,

Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

Honorable Katherine R. Curtis, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Peter F. Carroll, Attorney at Law, Kalispell, Montana

For Respondent:

Thane Johnson, Werner, Epstein and Johnson, Cut Bank, Montana

Tia Robbin, Kaufman, Vidal and Hileman, Kalispell, Montana

Submitted on Briefs: November 18, 1999

Decided: March 24, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

1. ¶Terry L. Bradley filed this action with the Eleventh Judicial District Court, Flathead County, asking for a declaratory judgment cancelling a contract under which he purchased an automobile. The court granted the defendants' motion for summary judgment. We affirm.

2. ¶The issue is whether the District Court erred in granting summary judgment for the defendants and denying Bradley's motion for summary judgment.

3. ¶In 1997, Terry Bradley shopped for a motor vehicle at Eisinger Motors in Kalispell, Montana, and left his name and telephone number with salesman "Geo." Johnson. Johnson called Rick Muffitt, a salesman at North Country Automotive and Marine, Inc., to inquire whether that dealership had any vehicles meeting Bradley's wishes. Muffitt told Johnson that North Country had a 1996 GMC Yukon which might interest Bradley. Johnson gave Muffitt Bradley's telephone number.

4. ¶Muffitt called the Bradley home and identified who he was and how he had obtained the Bradleys' telephone number. Muffitt avers that he identified North Country as his place of employment, although Bradley avers that he did not. Muffitt told Bradley that he had a 1996 GMC Yukon on the sales lot. Bradley invited Muffitt to bring the vehicle to the Bradleys' home, which Muffitt did.

5. ¶Bradley and his wife test-drove the GMC Yukon and decided to buy it. They allowed Muffitt to take their trade-in vehicle back to the dealership to determine its value. Muffitt took the paperwork for the sale, which was prepared at the North Country dealership, back to the Bradleys' home, where Terry Bradley signed it.

6. ¶The Bradleys later contacted North Country regarding options that they wished to have installed on the vehicle. Muffitt swears by affidavit that, at that time, the Bradleys expressed their satisfaction with the GMC Yukon and invited him to stop by their house again.

7. ¶The purchase was financed through First Security Bank. The Bradleys made payments of $681.51 per month for two months, and then attempted to cancel the contract. When the defendants did not agree to that, Terry Bradley filed this action requesting a declaratory judgment that the sales transaction was a personal solicitation sale and that North Country's failure to inform the Bradleys that they had a right to cancel the contract is an unfair and deceptive trade practice.

8. ¶Both sides moved for summary judgment. The District Court granted the

defendants' motion, and Bradley appeals.

## Discussion

1. ¶Did the District Court err in granting summary judgment for the defendants and denying Bradley's motion for summary judgment?
2. ¶We review appeals from summary judgments de novo. *Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663. Like the District Court, we apply the following evaluation, pursuant to Rule 56(c), M.R.Civ.P.:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law.

*Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903 (internal citations omitted). We review the legal determinations made by a district court to ascertain whether the court erred. Bruner, 272 Mont. at 265, 900 P.2d at 903.*

1. ¶At issue is the applicability to this transaction of Montana's Personal Solicitation Sales Act, Title 30, Chapter 14, part 5, MCA. The Act protects buyers in "personal solicitation sales" by providing a cooling-off period during which the buyer may choose to cancel such a sale. The Act defines "personal solicitation sales" as

any attempt by a seller who regularly engages in transactions of the same kind to sell goods or services which are primarily for personal, family, or household purposes, when either the seller or a person acting for him contacts the buyer by telephone or in person other than at the place of business of the seller, except:

(a) an attempted sale in which the buyer personally knows the identity of the seller, the name of the business, firm, or organization he represents, and the identity or kinds of goods or services offered for sale;

(b) an attempted sale in which the buyer has initiated the contact with the seller;

(c) an attempted sale of a newspaper subscription in which the seller is a minor engaged in both the delivery and the sale of the newspaper; or

(d) an attempted sale of an insurance policy.

Section 30-14-502(2), MCA.

1. ¶The District Court determined that the transaction at issue in this case was not a personal solicitation sale. That is the first error alleged by Bradley, who maintains that because North Country was in the business of selling motor vehicles, it qualifies under the above statute as a "seller who regularly engages in transactions of the same kind."

2. ¶A fundamental principle of statutory construction is that the intent of the legislature is to be pursued whenever possible. Section 1-2-102, MCA. In determining that intent, a statute which is plain and unambiguous on its face must be applied as written. *Connery v. Liberty Northwest Ins. Corp.* (1996), 280 Mont. 115, 119, 929 P.2d 222, 225. Legislative history may be considered only when the legislative intent cannot be determined from the statute's content. *Dorn v. Board Of Trustees of Billings School Dist. No. 2* (1983), 203 Mont. 136, 144, 661 P.2d 426, 430.

3. ¶The District Court interpreted the words "transactions of the same kind" in § 30-14-502(2), MCA, to refer to transactions as a whole-that is, the place, the mode of contact with the consumer, and the product; not just the type of product sold. Because Bradley presented no evidence that North Country regularly engaged in sales of vehicles by telephone or in person at buyers' homes, the court ruled that the Personal Solicitation Sales Act did not apply to this sale. The court stated that "[t]here is no indication of an intent by the legislature to address a single instance of telephone or home contact by a regularly established seller of a certain type of goods or services."

4. ¶We agree with the District Court. The plain meaning of the words "regularly engages in transactions of the same kind" logically refers not only to the type of

goods sold, but also to other aspects of the transaction; e.g., whether the transaction was a door-to-door or telephone sale. The title of the legislation which became the Act was "An act for the general revisions of laws relating to a three-day cooling off period on door-to-door sales." "Door-to-door sales" necessarily refers to more than a single transaction at a buyer's home, and clearly identifies the kind of transactions sought to be regulated under the Act. The words "regularly engages" substantiate the legislature's intent to limit the statute's application to only those solicitors who sell their products in this manner on a regular basis.

5.  ¶We conclude that the Personal Solicitation Sales Act does not apply to a one-time sale by telephone or in person at a buyer's home. Because Bradley did not bring forth any evidence that North Country regularly attempted sales by telephone or in person other than at its place of business, we agree with the District Court that the Personal Solicitation Sales Act does not apply to this case.

6.  ¶Bradley also argues that the District Court erred when it determined that because Muffitt identified himself and the business for which he was employed to Bradley, this sale was within the exception to the definition of "personal solicitation sales" set forth at § 30-14-502(2)(a), MCA. Because we have affirmed the District Court's ruling that the Personal Solicitation Sales Act does not apply to this sale under the court's first rationale, we need not address this question. Because we determine that judgment for the defendants was correct as a matter of law, we also do not address Bradley's third argument, that the court should have instead granted his motion for summary judgment.

7.  ¶We hold that the District Court did not err in granting summary judgment for the defendants and in denying Bradley's motion for summary judgment. We affirm the decision of the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JEFFREY M SHERLOCK

District Judge, sitting in place of Justice Nelson

/S/ JOHN S. HENSON

District Judge, sitting in place of Justice Regnier

Justice Terry N. Trieweiler dissents.

1. ¶I dissent from the majority opinion. I would reverse the judgment of the District Court.
2. ¶The Plaintiff, Terry L. Bradley, brought this action pursuant to that part of the Consumer Protection Act which pertains to "personal solicitation sales" and is found at § 30-14-501, MCA, et seq. The purpose of this part of the act is "to afford consumers subjected to high pressure personal solicitation sales tactics a cooling-off period." In stating the purpose of the act the legislature made no distinction regarding the frequency with which a seller engages in personal solicitation sales tactics.
3. ¶The act requires that before any personal solicitation, the seller clearly identify itself; (§ 30-14-503, MCA) and provide any buyer with the right to cancel any sale consummated within three days following the transaction. Section 30-14-504, MCA. Section 30-14-505, MCA requires that the seller provide the buyer with a notice of his or her right to cancel and states that until the notice has been provided the time for cancellation does not begin to run. A personal solicitation covered by the act is defined in § 30-14-502, MCA, as follows:

(2) "Personal solicitation" means any attempt by a seller who regularly engages in transactions of the same kind to sell goods or services which are primarily for personal, family, or household purposes, *when* either the seller or a person acting for him contacts the buyer by telephone or in person other than at the place of business of the seller, except:

(a) An attempted sale in which the buyer personally knows the identity of the seller, the name of the business, firm, or organization he represents, and the identity or kinds of goods or services offered for sale . . . .

(Emphasis added.)

1. ¶In this case the District Court held that North Country Auto and Marine did not engage in a "personal solicitation" because it does not regularly contact buyers by telephone or in person at a place other than the seller's place of business. The majority, after setting forth the correct rules of statutory construction, then misapplied those rules to affirm the District Court.

2. ¶As noted by the majority, legislative intent must first be determined by the plain language of the statute. When the statute speaks for itself, other forms of interpretation are not appropriate. The plain language of § 30-14-502(2), MCA, does not require that a seller regularly engage in solicitation by phone or in person in order for a transaction in which that seller is involved to satisfy the definition of "personal solicitation." The statute defines "personal solicitation" as "*any attempt* by a seller who regularly engages in transactions of the same kind to sell goods . . . when either the seller or a person acting for him contacts the buyer by telephone or in person other than at the place of business of the seller . . . ." Section 30-14-502(2), MCA (emphasis added). The plain language of the statute simply requires that the seller regularly engage in selling the type of item which is the subject of the transaction and applies to "*any attempt*" by that seller to solicit business by phone or in person somewhere other than at the seller's place of business. All of those elements were satisfied in this case. North Country Auto regularly engages in the sale of automobiles. An automobile was the subject of the transaction which gave rise to this lawsuit. The original solicitation was by phone and follow-up contact between the buyer and seller occurred in person at the buyer's home, which was a place other than the seller's place of business.

3. ¶By adding the requirement that the seller regularly engage in solicitations by telephone or at a place other than the seller's place of business, the District Court, and now the majority of this Court, have added requirements to the statute that are not found in its plain language. Therefore, I dissent from that conclusion.

4. ¶The District Court also held that even if Bradley's purchase from North Country Auto and Marine was the result of a "personal solicitation" this particular transaction was exempted from coverage based on § 30-14-502(2)(a), MCA, which exempts a transaction in which the "buyer personally knows the identity of the seller . . . ." The District court held that because Murfitt claims to have identified himself to Bradley during the initial phone call, Bradley "personally knew" the identity of the seller. However, the District Court's conclusion ignores the language in § 30-14-503, MCA, which requires that in every "personal solicitation" the seller identify itself at the time of the initial contact. Therefore, if the mere fact that the seller identifies itself is sufficient to exempt it from the act's coverage, then all the notice requirements of the act and cancellation rights provided by the act would be eliminated simply by a seller's compliance with the requirements of the act. The exception would literally swallow the rule. That interpretation ignores the requirement that statutes be interpreted in a way that does not defeat their object or purpose. *See Montana Talc Co. v. Cyprus Mines Corp.* (1987), 229 Mont. 491, 498, 748 P.2d 444, 449, and the requirement that various provisions of an act be construed in a way to give effect to all parts of the act if possible. *See* § 1-2-101, MCA.

5. ¶In order to give effect to §§ 30-14-503 through -505, MCA, I would interpret the exemption provided at § 30-14-502(2)(a), MCA, to apply only in those situations where the buyer has some familiarity with the seller based on his own personal knowledge without regard to the

introduction required by § 30-14-503, MCA.

6. ¶Furthermore, I conclude that the District Court erred when it decided as a matter of fact that Murfitt did identify himself and his employer to Bradley during their initial contact. That finding was based on Murfitt's affidavit as are those facts set forth in paragraphs 4 through 6 of the majority opinion. However, Bradley filed his own affidavit, which in several important respects, controverts those statements made in Murfitt's affidavit. For example, Bradley stated that Murfitt insisted on bringing the vehicle to his home, and after the purchase was agreed upon, submitted a number of papers for Bradley's signature which Bradley was not given the opportunity to read. Bradley stated in his affidavit that he does not recall Murfitt saying who he worked for during their initial conversation but that he did recall being angry when he first realized, while signing the sales documents, that he was doing business with North Country. He stated that he had previously bought a boat from North Country and would not have knowingly done business with that firm again.

7. ¶The District Court resolved the factual issue created by contradictions in Murfitt's and Bradley's affidavits by simply finding that Bradley's affidavit was not credible. However, it is not the function of the District Court to resolve issues of credibility and thereby decide factual issues by summary judgment. Therefore, I conclude that even if the District Court had correctly interpreted the exemption provided in § 30-14-502(2)(a), MCA, there was no factual basis upon which to apply that exemption as a bar to Bradley's claim as a matter of law.

8. ¶For these reasons, I dissent from the majority opinion and would reverse the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

/S/ WILLIAM E. HUNT, SR.