No. 00-442

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 221

JAMES CYR VIVIER and KIM VIVIER,
husband and wife, and parents of KELLY
VIVIER, a minor child; KELLY VIVIER,
individually; JAMES CYR VIVIER and
THOMAS S. WINSOR as conservators of
the estate of KELLY VIVIER,

Plaintiffs and Appellants,

v.

STATE OF MONTANA DEPARTMENT OF
TRANSPORTATION; LEWIS AND CLARK
COUNTY; and the LEWIS AND CLARK
COUNTY COMMISSIONERS,

Defendants and Respondents.

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Thomas S. Winsor, Michael Scott Winsor, Winsor Law Firm, PLLC,
                Helena, Montana

        For Respondents:

                P. Keith Keller, Charles G. Adams, Keller, Reynolds, Drake, Johnson and
                Gillespie, P.C., Helena, Montana (State of Montana)

                Allen B. Chronister, Chronister, Moreen & Larson, P.C., Helena, Montana
                (Lewis and Clark County and Lewis and Clark County Commissioners)

                                                Submitted on Briefs: October 19, 2000

                                                Decided:  November 8, 2001

Filed:

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Plaintiffs James Cyr Vivier, et al., ("The Viviers") appeal from the orders granting summary judgment in favor of the Defendants as well as the order denying their motions to alter or amend judgment issued by the First Judicial District Court, Lewis and Clark County. The Viviers raise a number of issues on appeal. We find the following issue dispositive: whether the District Court erred when it concluded that the Viviers failed to produce evidence of causation.

## BACKGROUND

¶2 This action arises out of an accident that occurred on September 17, 1995, when a car driven by Lisa Loferski struck Kelly Vivier, a ten-year old girl, as she was riding her bicycle. The accident occurred on York Road in Lewis and Clark County, Montana, approximately one-half mile from the intersection of York Road and Canyon Ferry Road. Both Loferski and Kelly were traveling toward Helena in the west-bound lane of York Road. Loferski had just passed a pickup truck and reentered her lane when she saw Kelly on the right-hand side of the road. Upon seeing Kelly, Loferski moved back towards the left-hand lane to give Kelly room. Loferski stated that she thought Kelly noticed her. Kelly turned her head a little bit and then attempted to cross York Road about ten or twenty feet in front of Loferski's car. Loferski slammed on her brakes and turned her car hard to the left but was unable to avoid hitting Kelly. Kelly sustained serious injuries.

¶3 The Viviers filed a complaint against the State Department of Family Services and the Department of Justice on September 16, 1997. The Viviers alleged that Family Services breached their duty of care by failing to provide sufficient safety, guidance, and supervision

2

to Loferski, a minor foster child in the State's permanent care. The Viviers also alleged that the Department of Justice had breached its duty of care by issuing a driver's license to Loferski. The Viviers moved to amend their complaint to add the State Department of Transportation ("DOT") as a party on January 27, 1998, alleging that DOT negligently failed to make the road safe, thereby causing Kelly's injuries. On December 24, 1998, the Viviers further moved to add Lewis and Clark County. On January 8, 1999, the District Court granted summary judgment in favor of the Department of Family Services and the Department of Justice. The Viviers do not appeal from this ruling.

¶4 On January 26, 2000, the District Court issued a Memorandum and Order granting summary judgment in favor of Lewis and Clark County. The court concluded that the county did not have a duty with respect to the design and construction of York Road. The court granted summary judgment in favor of DOT on February 23, 2000. The court concluded that DOT did not have a duty to undertake reconstruction of York Road simply because standards of construction had changed since the road was originally constructed. The court also concluded that the Viviers failed to submit evidence tending to show that the accident was caused by a design or construction problem. The Viviers moved the court to reconsider, alter, or amend its orders granting summary judgment in favor of Lewis and Clark County and DOT. The District Court denied both motions by Order dated March 27, 2000. The Viviers appeal.

## STANDARD OF REVIEW

¶5 We review a district court order granting summary judgment *de novo* applying the same evaluation as the district court pursuant to Rule 56, M.R.Civ.P. *See Bruner v.*

3

*Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

## DISCUSSION

¶6     Did the District Court err by granting summary judgment in favor of Lewis and Clark County and DOT?

¶7     The District Court concluded that the County did not have a duty with respect to the design and construction of York Road as a matter of law. The District Court also concluded that DOT did not have a duty to undertake reconstruction of York Road and that the Viviers failed to produce evidence tending to show that the accident was caused by a design or construction problem. The court also concluded that all the facts before it showed that the accident was caused by Kelly turning unexpectedly in front of Loferski's vehicle.

¶8     The Viviers contend that the District Court's rulings are incorrect. The Viviers argue that the hazardous condition of York Road caused or was a substantial factor contributing to the accident because its condition left Loferski with no way of avoiding the collision without facing the threat of serious injury to herself. The Viviers maintain that the County breached its duty to provide for the orderly development of subdivisions so as to promote traffic safety. The Viviers maintain that DOT breached its duty to provide reasonably safe highways by

4

failing to improve York Road.

¶9 Lewis and Clark County argues that it has no duty to reconstruct or upgrade York Road and that its only duty with regard to York Road is to provide adequate maintenance services. The County notes that the Viviers do not contend that the accident was caused by improper maintenance. The County contends that the inescapable conclusion based on the testimony of the investigating officer and Loferski is that the accident occurred because Kelly made a sudden and unsafe turn in front of Loferski's car.

¶10 DOT contends that York Road was built according to the guidelines and standards in effect at the time it was designed and built and that it does not have a duty to rebuild the road simply because the standards for highways have changed since the time of original construction. DOT also insists that even if the road had been rebuilt, it would not have prevented this accident because the accident was caused by Kelly darting out in front of Loferski.

¶11 A cause of action for negligence has four elements: (1) duty; (2) breach; (3) causation; and (4) damages. *Wiley v. City of Glendive* (1995), 272 Mont. 213, 217, 900 P.2d 310, 312. Summary judgment is proper if the moving party establishes that one element of a cause of action lacks any genuine issue of material fact and the non-moving party does not come forward with proof that a genuine issue does exist. *Wiley*, 272 Mont. at 216, 900 P.2d at 312.

¶12 The essence of the Viviers' cause of action is as follows: DOT and Lewis and Clark County had a duty to make improvements to the road such as widening the shoulders and flattening the slope of the borrow pits to make it safer. DOT and the County did not fulfill

5

that duty. Had there been wider shoulders and flatter slopes on the sides of the road, Loferski would have had more room to maneuver and could have avoided Kelly. Thus, the failure of DOT and the County to make improvements to the road caused the accident.

¶13  We agree with the District Court that the Viviers have failed to come forward with proof that a genuine issue of fact exists with regard to causation. Regardless of whether DOT or the County had a duty to make improvements to York Road, the evidence before the court showed that the accident happened because Kelly turned unexpectedly in front of Loferski's vehicle before Loferski had a chance to react. The evidence did not show that the condition of the road prevented Loferski from maneuvering to avoid the accident.

¶14  On the issue of causation, the Viviers direct our attention to the deposition of Donald Fenton, a highway safety engineer retained by them as an expert witness. The Viviers contend that Fenton testified that the accident probably would not have occurred if there had been wider shoulders and flatter slopes on the sides of York Road so that Loferski could have driven off of the road in relative safety.

¶15  We agree with the Defendants, however, that Fenton's deposition does not raise a issue of fact with regard to causation. DOT observes that Fenton did not perform an accident reconstruction and had no relevant knowledge of how the accident occurred except the information provided by Officer Roger Dundas, the investigating highway patrolman. In addition, the following exchange between Fenton and counsel for the County occurred:

> Q.  Officer Dundas says that the accident occurred when the bicycle suddenly turned, without warning, to the left from the right side of the roadway into the path of the car. I think he has similar language in the narrative of his accident report that you referenced.

A.    Yeah.

Q.    Are you aware of any facts that would indicate that the accident happened in any other manner other than as he described there?

A.    No.

¶16    The Viviers contend that the County and DOT relied exclusively on Officer Dundas' report which is contradicted by Loferski's recollection of the events. Officer Dundas testified in an affidavit that his investigation revealed that the "accident occurred when the bicyclist [Kelly] suddenly turned left from the right side of the roadway across into the path of the Loferski vehicle without warning or adequate time for Loferski to react." The Viviers maintain that Loferski had time to react and testified that, as soon as she saw Kelly, she moved as far into the left lane as she could go without going into the ditch. The Viviers insist that the reason she could not avoid the accident was a product of the road width and not reaction time.

¶17    We do not believe that Loferski's testimony differs from Officer Dundas' report in any significant way and does not raise an issue of fact with regard to causation. The Viviers' characterization of Loferski's testimony is incorrect. Loferski did not testify that she was faced with the choice of either colliding with Kelly or driving into a steep ditch, nor did Loferski testify that she would have given Kelly more room in order to pass her safely, but was prevented from doing so because of the road width. Rather, Loferski testified that when she saw Kelly, she moved over to the other side of the road. Loferski repeatedly stated that Kelly gave no indication that she was going to cross the road. Loferski was driving sixty miles per hour and Kelly turned her bike in front of Loferski's line of travel about ten to

twenty feet in front of Loferski's car. Loferski turned her car hard to the left as soon as she saw Kelly turn onto the road. Lastly, Loferski testified that she would have driven her car into the ditch if she had known that Kelly was going to turn in front of her. This evidence does not contradict Officer Dundas' conclusion that Kelly suddenly turned left from the right side of the roadway into the path of Loferski's vehicle without warning or adequate time for Loferski to react.

¶18 The Viviers have failed to produce any facts which contradict Officer Dundas' conclusions with regard to causation. Therefore, we hold that the District Court's conclusion that the County and DOT are entitled to summary judgment is correct.

¶19 Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8

Justice Terry N. Trieweiler concurs.

¶20    I specially concur with the majority's conclusion that the District Court correctly granted summary judgment in favor of Lewis and Clark County. However, I disagree with the majority's conclusion that judgment in favor of the County was justified because of the plaintiffs' failure to prove causation. Instead, I conclude that the County simply had no duty to re-design or rebuild York Road. York Road at the time and place of the accident in question was a state-owned federal-aid highway for which the State Department of Transportation was the custodian. *See* § 60-1-102(2), MCA. For that reason the State transportation commission had the exclusive authority to designate the road for reconstruction. *See* § 60-2-110, MCA.

¶21    I dissent from that part of the majority opinion which concludes that the District Court correctly dismissed the State of Montana Department of Transportation by summary judgment.

¶22    "The State has the duty to provide and maintain safe highways for the citizens of the State of Montana." *Brohman v. State* (1988), 230 Mont. 198, 201, 749 P.2d 67, 70 (citing *State v. District Court of the Fourteenth Judicial District* (1977), 175 Mont. 63, 67, 572 P.2d 201, 203.) In this case there was evidence that the State breached its duty to provide a reasonably safe highway and that that breach was the cause of Kelly Vivier's serious injuries.

¶23    While the majority opinion refers to the deposition of the plaintiff's expert, Don Fenton, it overlooks the affidavit submitted by Fenton in opposition to the State's motion for summary judgment. In that affidavit, the following relevant statements are made:

1. I am an expert witness in the above entitled action.

2. At the time of my deposition I had not had the opportunity to review the deposition of Lisa Loferski, the State's accident reconstruction report and photographs of the vehicle which I have reviewed for the purposes of this affidavit. Based upon this information it is my opinion that this accident would not have occurred if FAS 280 was improved to safety standards for the reasons set forth below.

3. At the time of the accident Federal engineering safety standards would have required substantial improvement to FAS 280 because of traffic volumes that exceed the design capabilities of the road. The state had notice of traffic volumes and the fact that the road had exceeded its design life, two factors that made the road unreasonably hazardous.

4. Improvements that should have been made would include 6 foot paved shoulders on both sides of the road as explained more fully in my first affidavit.

5. It is my professional opinion that the hazardous condition of FAS 280 resulting from traffic volumes far in excess of design capabilities and the failure of the state and county to take reasonable steps to improve the road in accordance to federal requirements was a substantial cause resulting in the accident at issue because of the width of the road, the absence of shoulders and other design deficiencies as more fully stated in my opinion letter dated December 10, 1998.

6. Based upon the deposition of Lisa Loferski, the Reconstruction Report by Accident Graphics, and simple mathematics it is my opinion, simply put, that the accident would have been avoided all together had the road been wider.

7(a) Specifically, Lisa Loferski stated that as soon as she noticed the little girl she moved as far as she could into the left lane and there was no way that she could have gone further without going into the ditch.

(b) Lisa Loferski also stated that the little girl was riding her bicycle on the edge of the right side of the road prior to turning left.

(c) The State's accident reconstructionist determined that it took the little girl approximately 2.3 seconds to travel from the edge of the road to the point of impact, a distance of approximately 15 feet.

10

(d) Had the little girl begun her turn from the edge of a safe road with 6 foot shoulders traveling at the same rate of speed she would have been six feet away from the point of impact at that time.

(e) If it took the little girl 2.3 seconds to travel 15 feet, as per the accident reconstruction report, by that calculation it would have taken her .93 seconds to reach the point of impact with an additional 6 feet shoulder.

(f) At a speed of 40 to 45 m.p.h. as stated by the reconstructionist or at a speed of 55 as stated by the driver Lisa Loferski the driver would have been, respectively 53.9 feet, 60.72 feet, and 81 feet beyond the point of impact before the little girl reached the point of impact.

(g) The 1980 Buick LeSabre was approximately 18 feet long which would have put it approximately 3 car lengths away at 40 mph, or as much as 4 ½ car lengths away going 55 m.p.h. beyond the point of impact at the time the little girl could have reached the point of impact.

. . .

¶24 Fenton is a qualified highway safety engineer who spent part of his career overseeing safety programs for the Federal Highway Administration and, before that, designed and built roads. His job for the Federal Highway Administration required evaluation of primary and secondary highways. He was fully qualified to express the opinions set forth in his affidavit. In fact, there are no objections from either party to Fenton's qualifications.

¶25 Fenton's affidavit raises issues of fact regarding the State's breach of duty and the issue of causation. Liability cannot be resolved by summary judgment when factual issues concerning negligence and causation are presented. *Dechesneau v. Silver Bow County* (1971), 158 Mont. 369, 492 P.2d 926. While the investigating officer testified that the cause of Vivier's accident was her own sudden and unexpected movement, the conflict in opinions

11

simply gave rise to an issue of fact. Furthermore, an accident can result from more than one cause and contributory negligence is not a bar to recovery. *See* § 27-1-102, MCA.

¶26 For these reasons, I conclude that the District Court erred when it granted summary judgment to the State of Montana. The weight to be given to the testimony provided by the plaintiffs' expert when that testimony is considered in light of the surrounding circumstances is the responsibility of the finder of fact and not, in this case, the district court.

¶27 For these reasons, I specially concur with and partially dissent from the majority opinion.

_____
Justice